DENNERY, et al. *v.* HUGHES, et al.

June 9, 1952.

No. 38325 (59 So. (2d) 316)

688

Wells, Thomas, Wells & Smith, for appellants.

**Wm. Harold Cox,** for appellees.

**Arrington, J.**

This in an appeal from a decree of the Chancery Court of the First Judicial District of Hinds County, dismissing bill of complaint of appellants to enjoin the development and operation of a cemetery on lands owned by the appellees. The appellant, A. J. Dennery, and 42 others,

filed their bill of complaint against W. H. Hughes, R. A. Ort, and Garden Memorial Park, a corporation, the owner of 65 acres of land located approximately eight miles north of Capitol Street, Jackson, Mississippi, and 4.3 miles from the corporate limits of the City of Jackson on U. S. Highway 49. This land is west of the highway and on the opposite side of the highway from the home of the appellant A. J. Dennery. A number of the other appellants own property in close proximity to the proposed cemetery. The appellants contended in the lower court that they would suffer irreparable damage in that the value of their homes and property would be greatly impaired or destroyed; that their homes would be rendered unfit for comfortable and happy habitation; and that the value of their lands for reasonable uses would be destroyed, unless injunctive relief be granted them.

The evidence herein shows that within a distance of approximately three-fourths of a mile south of the proposed cemetery there are two churches, a school house and an old established cemetery; that approximately one-fourth of a mile north of the proposed cemetery there is another church. According to the testimony of appellant's expert witness, a Jackson realtor, there were located in an area of one-half mile in all directions, nineteen homes. This included homes of all kinds. This witness, when asked by the court to classify the property, testified that it was agricultural property and a location for small tracts to be developed for surburban homes, but that in its present condition, it was agricultural property. This witness further testified that the location and operation of the cemetery would depreciate the value of the property in that area. The testimony of the five appellants who testified was that the value of their property would be depreciated and that they objected to a cemetery in the neighborhood. A large number of exhibits were introduced in evidence by both parties, among which are about fifty photographs of the property in-

volved and various plats. These exhibits together with the testimony of the witnesses, show that the area involved is agricultural and pasture lands. The record shows that the chancellor visited the premises involved in this suit and at the conclusion of the hearing, made the following finding of fact, which was incorporated in his decree:

"* * * and the court having heard and considered all of the evidence and testimony in the case and having visited and inspected the area in question and finding that the area wherein the Garden Memorial Park is located is essentially farm acreage and not a residential area or district, and that the proposed development of defendants' property as proposed to be used according to the testimony of W. H. Hughes and of the witness Banks, would not be reasonably characterized as a nuisance and no substantial evidence was proffered in this record to show the project in contemplation a nuisance in fact; and the court is of the opinion that the bill of complaint is therefore without merit and ought to be dismissed."

The appellant assigns as error that the court erred in finding that the area wherein the Garden Memorial Park is located is essential farming acreage and not a residential district, and in holding that the proposed development of Garden Memorial Park would not be reasonably characterized as a nuisance. We have carefully examined all of the evidence in this record and find that the chancellor's decree that the area involved was agricultural lands is amply supported by all of the evidence. In Glover v. Falls, 120 Miss. 201, 82 So. 4, 5, the Court said:

"An examination of the record convinces us that all the issues presented by the various assignments and pressed in argument are principally issues of fact. There is conflicting testimony, and the decree of the chancellor is not only based upon the testi-

mony but upon his personal inspection of the brake and the system of ways in dispute. In this attitude of the record we are not justified in reversing the chancellor on the facts.''

In Blair v. McMillion, 171 Miss. 33, 156 So. 519, the Court said: ''Appellants requested the chancellor, before deciding the case, to go view and measure the premises involved. Appellees joined in this request. Whereupon ▇▇ ▇ the chancellor went upon the premises, viewed appellants' and appellees' lots, measured them twice, and, after so doing, rendered the decree appealed from, in which it was recited that he found from such view and measurements in connection with the other evidence in the case that the facts were against appellants. What the chancellor saw in connection with his measurements cannot be ignored in deciding this question. It is a part of the evidence in the case, and may have been the turning point in the decision of the issue of fact.''

We do not find where this court has ever passed upon the exact question presented here, although we have a number of cases involving funeral homes. The appellant argues that since the court has enjoined the operation of a funeral home in residential districts on the grounds that it was a private nuisance, the court should enjoin the operation of a cemetery for the same reasons. In Williams v. Montgomery, 184 Miss. 547, 186 So. 302, the court enjoined the operation of a funeral home in an exclusive residential district in the City of Greenwood on the ground that it was a private nuisance. In the case of Davis v. Holmes, 189 Miss. 554, 198 So. 25, the court enjoined the operation of a funeral home in the residential area of the City of McComb, under the authority of Williams v. Montgomery, supra. Smith v. Fairchlid, 193 Miss. 536, 10 So. (2d) 172, was a case to enjoin the location of an undertaking establishment in the residential area in the City of Hattiesburg. The court reversed the lower court and entered a permanent injunction enjoining the

operation of the undertaking and embalming establishment under the authority of Williams v. Montgomery, supra.

We do not think that the rule announced in the above cited cases is applicable to the facts involved in the case at bar for two reasons; there is a difference between the operation of a funeral home or undertaking establishment, and a cemetery; and here no residential area is involved as the cemetery is located 4.3 miles north of the city limits of Jackson in an agricultural area. In 10 Am. Jur., Cemeteries, Sec. 16, page 498, it is stated: "There is a well-established rule that a cemetery is not a nuisance per se. A place of interment, however, may be a nuisance as a matter of fact, depending upon its location, extent, and manner of use, including mode of burials. A cemetery does not constitute a nuisance merely because it is a constant reminder of death and has a depressing influence on the minds of persons who observe it, or because it tends to depreciate the value of property in the neighborhood, or makes the vicinity less attractive and is offensive to the esthetic sense of an adjoining proprietor. On the other hand, where the location or maintenance of a cemetery endangers the public health, either by corrupting the surrounding atmosphere, or the water of wells or springs, it constitutes a nuisance."

In Harper v. City of Nashville, 136 Ga. 141, 70 S. E. 1102, 1103, the Court said: "Under the evidence contained in the record, the court did not err in refusing the injunction. Cemeteries are a necessity. A place where the dead may be given decent Christian burial must be established, and the location of such must necessarily be upon some tract of land more or less suitable and commodious; and it is impossible to find a tract of land that is not contiguous to the lands of some one else. And inasmuch as cemeteries must be established, and should be located where they are reasonably accessible, it is rarely possible to so fix their location, when they are designed for the use of a populous town or city,

where they will not be in more or less proximity to some residence; and unless the soil of the land used as a cemetery and that of the contiguous owners is such as to cause a drainage which will produce a contamination of the waters, thereby putting in jeopardy the health or lives of the owners of the contiguous lands and the health of their families, or unless the air would be contaminated, courts of equity will not interfere by the grant of injunctive relief to prevent the establishment and location of the cemetery. Cemeteries are not per se nuisances, and it is only in exceptional cases that their establishment and location would be enjoined by a court of equity.''

In Rosehill Cemetery Company v. City of Chicago, 352 Ill. 11, 185 N. E. 170, 87 A. L. R. 742, the Court held: ''The use of lands as a cemetery is not a private nuisance of which a local improvement association and neighboring property owners may complain, where the only basis of complaint is that the market and rental value of neighboring residential property is lowered because of the depressing psychological influence which a cemetery exerts.''

''The mere proximity to the premises of others does not render a cemetery a nuisance, because of their mental disquietude, superinduced by fixed or recurring reminders of death. Hume v. Laurel Hill Cemetery (C. C. 1905), 142 F. 552; Bellevue Cemetery Co. v. McEvers (1910), 168 Ala. 535, 53 So. 272; Musgrove v. St. Louis's Church [Catholic Church of St. Louis] (1855), 10 La. Ann. 431; Barnes v. Hathorn (1866), 54 Me. 124; Monk v. Packard (1880), 71 Me. 309, 36 Am. Rep. 315; Normandy Consol. (School) Dist. v. Harral (1926), 315 Mo. 602, 286 S. W. 86; Symmonds v. Novelty Cemetery Ass'n (Mo. App. 1929), 21 S. W. (2d) 889; Ellison v. [Com'rs of] Washington (1859), 58 N. C. (5 Jones, eq.) 57, 75 Am. Dec. 430. Neither is a cemetery a nuisance because it causes a depreciation in the value of neighboring property.'' Anno., 87 A. L. R. 761.

Young v. St. Martin's Church, 361 Pa. 505, 64 A. (2d) 814, 816, was a case to enjoin the defendants from establishing and maintaining a cemetery in a residential area. From a decree dismissing the bill of complaint, the plaintiffs appealed. The Court said: "It may be, as the learned chancellor below remarked during the course of the trial, that all of us have a distaste for cemeteries, but it is a far cry from what is merely an annoyance or disagreeable intrusion to what the law regards and condemns as a nuisance. Plaintiffs concede, as they must, that a cemetery is not a nuisance per se even though it be near to residential properties, see 46 C. J. 696, (Sec. 122) 41; 10 Am. Jur. 498, Sec 16. As was said in the frequently cited case of Monk v. Packard, 71 Me. 309, 311, 36 Am. Rep. 315, 'A repository of the bodies of the dead is as yet indispensable, and, wherever located, it must ex necessitate be in the vicinity of the private property of some one who might prove its market value injuriously affected thereby.' Burial grounds must be established where they are reasonably accessible to surviving relatives and friends who naturally wish to visit the graves of their dear ones; they cannot, therefore, be located in the wild, and it would probably be impossible to find a suitable tract of land within any reasonable distance of built-up areas that would not be in more or less proximity to residential properties. Not being a nuisance per se, it is incumbent upon those wishing to prevent the establishment of a cemetery in the neighborhood to prove that it will constitute a nuisance in fact. This burden of proof plaintiffs, as already stated, have failed to sustain. Their chief complaints may be characterized as falling into two classes, one materialistic and the other sentimental. The former consists of fears that their properties will be depreciated in value; apart from the fact that the court below found to the contrary, this objection, even had it been established by the evidence, would not constitute ground for equitable relief. 10 Am. Jur. 498, Sec. 16; 39 Am. Jur. 309, Sec 28; Rhodes

v. Dunbar, 57 Pa. 274, 289, 290, 98 Am. Dec. 221; Unger v. Edgewood Garage, 287 Pa. 14, 20, 134 A. 394, 396, 397; Pennsylvania Company for Insurances on Lives and Granting Annuities, Trustee v. Sun Company, 290 Pa. 404, 409, 138 A. 909, 910, 55 A. L. R. 873. The other class of complaints is based upon purely psychic objections, but to such equity gives no heed, for it does not regard the melancholy reflection that may be engendered in sensitive minds by the close proximity of a cemetery as sufficient to brand it a nuisance within the legal meaning of that term. To constitute a nuisance it is not enough that the activity complained of is offensive to the eye, creates mental discomfort, or makes the vicinity less attractive. 39 A. Jur. 308, Sec. 27. It may be added that there are many cemeteries which are places of great artistic beauty and therefore aesthetically pleasing; espeially is this true of country churchyards.

"It is urged that because courts have frequently enjoined the operation of morgues and undertaking establishments in strictly residential districts similar action should follow in the case of cemeteries. However, not only was such an injunction refused in Rick v. Cramp, 57 [357] Pa. 83, 53 A. (2d) 84, but it is obvious that there is no close analogy between mortuaries and burial grounds since in the case of the former there is involved the taking in and out of dead bodies for the purpose of autopsies and embalming, the possible permeation of adjacent homes by noxious vapors from deodorants and disinfectants, the danger of infection from communicable diseases, and, in general, conditions likely to be offensive in a physical sense and not merely because of their serving as an unwelcome reminder of that 'undiscover'd country from whose bourn no traveller returns.' "

We are of the opinion that the evidence in this case is insufficient to prove that the proposed cemetery will constitute a nuisance in fact and that the learned chancellor

was correct in so finding. The decree of the court below is accordingly affirmed.

Affirmed.

**Roberds, P. J.,** and **Alexander, Hall,** and **Holmes, JJ.,** concur.