James BERRY, Sr., et al., Plaintiffs,

v.

ARMSTRONG RUBBER COMPANY,
Defendant.

Civ. A. No. J88–0653(B).

United States District Court,
S.D. Mississippi,
Jackson Division.

July 30, 1991.

Edwin E. Kerstine, Jackson, Miss., Jack W. Harang, Stuart H. Smith, New Orleans, La., for plaintiffs.

Robert H. Weaver, Watkins Ludlam & Stennis, Jackson, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

BARBOUR, Chief Judge.

This cause is before the Court on the Motion of Defendant Armstrong Rubber Company ("Armstrong") for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Having considered the Motion together with the supporting and opposing memoranda, exhibits, and documentation, the Court is of the opinion that the Motion of Defendant for Summary Judgment should be granted for the reasons as set forth below.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiffs' homes are located on two lots in the Mayfair subdivision in Natchez, Mississippi ("the site"). Armstrong owned and operated a tire manufacturing facility in Natchez until 1987. Plaintiffs allege that "toxic and hazardous" materials were at the Armstrong plant and disposed of by Armstrong on the two Mayfair lots. According to Plaintiffs, their homes were subsequently constructed on these lots.

On December 14, 1988, Plaintiffs filed their Complaint, alleging that hazardous chemicals allegedly dumped by Armstrong in and around their property present a serious threat to their health and that their property has suffered a diminution in value as a result. Plaintiffs seek response and cleanup costs, the imposition of civil penalties against Defendant, and actual and punitive damages. The Complaint asserts claims under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601, et seq. ("CERCLA"); the Toxic Substances Control Act, 15 U.S.C. § 2601, et seq. ("TSCA"); the Clean Air Act, 42 U.S.C. § 7401, et seq. ("CAA"); the Resource Conservation and Recovery Act, 42 U.S.C. § 6901, et seq. ("RCRA") and the federal and state common law of nuisance.

On May 17, 1989, the Court partially granted the first Motion of Defendant for Summary Judgment and the Motion of Defendant to Dismiss. All claims brought under TSCA, CAA, and RCRA and the federal and state common law of nuisance were dismissed. Only Plaintiffs' CERCLA claim survived.

Plaintiffs subsequently amended their Complaint to add an allegation that Defendant was liable to Plaintiffs under the common law of negligence and nuisance. A Third Amended Complaint further alleged that Armstrong had engaged in an ultrahazardous activity on the site and was therefore strictly liable. On November 5, 1990, Defendant filed its second Motion for Summary Judgment. Defendant asserts that summary judgment is appropriate because Plaintiffs have failed to present evidence of a genuine issue regarding the following material facts: (1) there is no proof that Plaintiffs' alleged physical and mental injuries are caused by exposure to any waste disposed of by Armstrong, (2) no dangerous or hazardous chemicals or sub-

stances generated by Armstrong have been identified in or around the Mayfair subdivision, and (3) Plaintiffs' residences and/or lots have not been damaged and/or devalued by any action of Armstrong.

## II. ANALYSIS

### A. STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure states in relevant part that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Moreover, the party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2553.

■ Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir.1980). The Fifth Circuit has stated the standard as follows:

[Rule] 56(c) mandates summary judgment in any case where a party fails to establish the existence of an essential element of his case and on which he bears the burden of proof. A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact. Rule 56(c) requires the district court to enter summary judgment if the evidence favoring the non-moving party is not sufficient for the jury to enter a verdict in his favor. When the moving party has carried his burden under Rule 56(c), his opponent must present more than a metaphysical doubt about the material facts.

*Washington v. Armstrong World Industries, Inc.,* 839 F.2d 1121, 1122–23 (5th Cir.1988) (citations omitted).

■ The summary judgment motion permits adjudication without prolonging the action with a time-consuming and expensive trial where there is no genuine issue of material fact. Rule 56(e) states in relevant part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Rule 56(e) does not permit mere conclusory allegations that a factual dispute exists to defeat a motion for summary judgment. "Courts are particularly indisposed to allowing conclusory allegations to defeat summary judgment after there has been—as here—opportunity for discovery." *In re "Agent Orange" Product Liability Litigation,* 611 F.Supp. 1223, 1258 (E.D.N.Y. 1985), *aff'd,* 818 F.2d 187 (2d Cir.1987), *cert. denied,* 487 U.S. 1224, 108 S.Ct. 2884, 101 L.Ed.2d 918 (1988).

### B. ISSUES OF CAUSATION, EXPOSURE, AND PRESENCE OF HAZARDOUS WASTES

■ Defendant contends that Plaintiffs have produced no evidence to sustain their

allegation that their physical and/or mental injuries were caused by exposure to Armstrong wastes. The Court finds this contention well taken. James Berry, Sr., complains of congestive heart disease from which he has suffered since 1977. No proof in the record, however, links Berry's heart disease to exposure to a hazardous or dangerous waste. Berry's daughter, Plaintiff Tangela Berry, complains of no health problems and her father agrees that she has no health problems. Plaintiff Dwight Berry characterizes his health as "good." He acknowledges that no medical doctor or medically-trained person has advised him that he can anticipate health problems from alleged exposure to "chemicals" at the site. He has never been examined to determine whether any toxic substances are present in his body. Charles E. Prater has suffered from high blood pressure for about fifteen years and is a "borderline" diabetic. Prater is unsure which health problems he attributes to "pollution" at the site. He admits that no medical doctor or medically-trained person has told him that his health problems are related to pollution. Prater's wife, Bessie Prater, is also a Plaintiff. She is being treated for high blood pressure, but there is no proof in the record that Bessie Prater's alleged medical problems were caused by any action of Armstrong. The testimony of the Plaintiffs establishes that, beyond the allegations of the Complaint, there is no evidence to establish a causal link between the personal injuries complained of by Plaintiffs and exposure to any chemical or waste disposed of by Armstrong in the soils of their lots in the Mayfair subdivision.

Furthermore, the Court finds that Plaintiffs have admitted the absence of a health risk. In an Agreed Order dated October 16, 1990, Magistrate Judge Countiss granted, in part, the Motion of Armstrong to Determine Sufficiency of Plaintiffs' Response to Requests for Admission. With respect to the issue of medical causation, the Court made the following rulings:

*REQUEST NO. 13:* No physician or other medical professional has advised or concluded that you are experiencing imminent substantial danger to your health as a result of exposure to chemicals from the Mayfair Subdivision soils.

*RULING:* The response is inadequate. Plaintiffs are directed to respond to this request.

*REQUEST NO. 14:* No physician or other medical professional has advised or concluded that you should vacate your place of residence.

*RULING:* The response is inadequate. Plaintiffs are directed to respond to this request.

The Magistrate Judge ordered Plaintiffs to respond in accordance with the ruling by October 26, 1990. Plaintiffs responded to Requests for Admission on November 7, 1990, two days after the filing of the second Motion for Summary Judgment and twelve days after the deadline imposed by the Magistrate Judge. These Requests for Admissions are thus deemed admitted pursuant to Rule 36(a) of the Federal Rules of Civil Procedure.

The Court notes that Plaintiffs did not respond to the assertion by Armstrong of Plaintiffs' failure to establish a causal link between activities of Defendant and Plaintiffs' injuries. In *In re "Agent Orange"*, the court acknowledged that Vietnam veterans were injured but granted summary judgment in the absence of credible evidence of a causal link between exposure to Agent Orange and the various diseases from which they were suffering. 611 F.Supp. at 1229. In the instant case the Court concludes that proof has not been produced that would warrant allowing the claims based on personal injury to go to the jury.

Defendant maintains that Plaintiffs' experts, after twenty-two months of discovery, have failed to produce any scientific evidence that chemicals or wastes of a toxic or dangerous concentration are located on either the Berry or Prater lots. Defendant asserts that Plaintiffs' case is predicated on disposal of toxic or hazardous materials by Armstrong at the site. If there is no evidence, beyond conclusory allegations, of the presence of hazardous wastes at the site, then, Defendant argues, the essential causal link between Plaintiffs'

injuries and alleged hazardous wastes in the Mayfair subdivision is missing.

■ Plaintiff James Berry, Sr., stated at his deposition that he witnessed the uncovering of "barrels, old tires, old uncured rubber and stuff like that" while his backyard was being redeveloped. He thus presumes that Armstrong is the source of these wastes because he says that in the early 1960s he saw Armstrong trucks driving in the vicinity of what is now Mayfair. Plaintiffs contend that wherever Armstrong disposed of old tires and rubber scraps that it also disposed of "hazardous materials" and that there are hazardous wastes in Mayfair generated by Armstrong. However, Plaintiffs do not support this theory with any testing data to indicate the presence of any hazardous substances on their lots. Presumption is not enough to survive an otherwise properly supported motion for summary judgment.

Plaintiffs' experts' testimony establishes that they have never performed any testing in Mayfair. In response to Requests for Admission 22 and 23, Plaintiffs admit that "No public health specialist or other person with scientific credentials such as toxicology, pharmacology, chemistry, medical doctor, biologist or any combination of the above has advised you that chemicals allegedly deposited at the Hampton Court Subdivision have migrated or otherwise been transported to your property" [or] ["other properties located in the Mayfair Subdivision."]

■ Plaintiffs' chemist, Wilma A. Subra, concludes in her deposition that the area of Natchez around George F. West Boulevard "has the potential for contamination by toxic substances from the residual waste products." Subra renders such an opinion even though she has conducted no chemical analysis for the site and has reviewed no chemical analysis by any third parties. The basis for this allegation is Subra's physical observance of waste with no chemical analysis to establish the toxicity of the waste. Subra's opinion that there is "potential for contamination by toxic substances" will be disregarded by the Court. Federal Rule of Evidence 703 does not

"make summary judgment impossible whenever a party has produced an expert to support its opinion." *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987) (quoting *Merit Motors, Inc. v. Chrysler Corp.*, 569 F.2d 666, 673 (D.C.Cir.1977)). If the bases for the expert's opinion are so unreliable that no reasonable expert could base an opinion on that data, the opinion should be excluded in the summary judgment determination of the court on whether there is a genuine issue regarding an essential element of the claim. *Viterbo v. Dow Chemical Co.*, 646 F.Supp. 1420, 1424 (E.D.Tex.1986), *aff'd*, 826 F.2d 420 (5th Cir. 1987).

Plaintiffs' chemical engineer, Dr. Ralph W. Pike, Jr., has performed no testing or review of the Mayfair site. Furthermore, Dr. N.B. Augenbaugh, Plaintiffs' geologist, reviewed one report on the subdivisions and characterizes his review of the site as "superficial": "I just heard it was a dumpsite that was turned into a subdivision, and I looked at some of the pictures to see where they were taking samples...." Accordingly, Augenbaugh's deposition adds nothing to the proof needed by Plaintiffs to avoid summary judgment.

Because of the deficiencies in the testimony of their experts, the Court is of the opinion that Plaintiffs are unable to establish the degree of proof of causation to avoid summary judgment. As evidenced in the review of Plaintiffs' expert testimony, Subra, Pike, and Augenbaugh have been unable to identify the hazardous substances allegedly disposed of by Armstrong at the sites. Plaintiffs' experts can cite to no soil sample test results to evidence the presence of dangerous substances in the soils of the subdivision. Plaintiffs' case is based on the presumption that these unidentified wastes allegedly disposed of by Armstrong are harmful. Subra's affidavit concludes: "This leads to the obvious conclusion that where as here, there is direct testimony that remaments [sic] of the tire plant waste stream which is reject tires and rubber waste are present, it must be assumed that more probably than not there has also been a release of hazardous mate-

rials." To defeat a motion for summary judgment, the nonmoving party must "present more than a metaphysical doubt about the material facts." *Washington,* 839 F.2d at 1122–23.

Plaintiffs have failed to present proof that hazardous substances exist on their property. The allegation that Armstrong contaminated Plaintiffs' homesites by prior dumping of hazardous wastes onto the land on which their homes were built and the allegation of injuries therefrom were enough to survive the first Motion of Defendant for Summary Judgment. However, Plaintiffs have now had the benefit of twenty-two months of discovery and have produced little more than the original allegations, with the exception of more conclusory statements promulgated by their experts. Significant discovery has been conducted over an extensive period of time and the case is ripe for a summary judgment determination. The Court is "particularly indisposed to allowing conclusory allegations to defeat summary judgment after there has been—as here—opportunity for discovery." *In re "Agent Orange",* 611 F.Supp. at 1258.

Defendant asserts that in toxic tort cases the Fifth Circuit mandates that plaintiffs present proof of exposure to the hazardous substance at the summary judgment stage. Without such proof, the element of causation cannot be established. In *Osburn v. Anchor Laboratories, Inc.,* 825 F.2d 908, 910 (5th Cir.1987), *cert. denied,* 485 U.S. 1009, 108 S.Ct. 1476, 99 L.Ed.2d 705 (1988), the court noted that proof of exposure existed before considering whether reasonable persons could find that exposure to chloramphenicol caused plaintiff's leukemia. In using chloramphenicol to treat cattle, the plaintiff had gotten the substance on his hands. *Id.* at 910, 914. In the instant case, Plaintiffs have not identified any hazardous waste on the Berry or Prater lots. Thus, it is impossible to do more than merely speculate about potential exposure to unidentified substances.

Nor will the argument asserted by Plaintiffs' experts that more discovery and investigation will reveal facts to support their conclusions serve, in and of itself, to defeat a summary judgment motion. The Fifth Circuit has stated on this issue that "[a] claim that further discovery or a trial might reveal facts which the plaintiff is currently unaware of is insufficient to defeat the motion [for summary judgment]." *Washington,* 839 F.2d at 1123 (citing *Woods v. Federal Home Loan Bank Board,* 826 F.2d 1400, 1414–15 (5th Cir. 1987)). Plaintiffs' experts have not identified the alleged hazardous substances, produced any proof of Plaintiffs' exposure to such substances, or produced proof of the medical problems of which Plaintiffs complain are caused by exposure to a particular substance.

## C. CERCLA CLAIM

Defendant asserts that Plaintiffs' CERCLA claims should be dismissed because Plaintiffs have not produced sufficient proof of their claims. In their Complaint Plaintiffs allege that Defendant is liable for "[c]lean up and other response and remedial costs necessary to restore the environment of the subdivisions." This is a demand for relief under CERCLA, 42 U.S.C. § 9601 *et seq.* Plaintiffs claim that Armstrong is liable as a generator of hazardous substances:

(3) [A]ny person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, ... shall be liable.

42 U.S.C. § 9607(a)(3).

 CERCLA only imposes liability where a (1) "hazardous substance," (2) has been released or is threatening release, and (3) the hazardous substance is found on the site, (4) the hazardous substance found on the site is of the same type of a substance disposed of by defendant on the site, (5) the presence of the hazardous substance on the site poses an imminent and substantial

threat to health or the environment. *Violet v. Picillo*, 648 F.Supp. 1283, 1289 (D.R.I.1986). If any one of these factors is absent, the entire CERCLA claim must be dismissed, as a matter of law.

■ In ruling on the first Motion of Defendant for Summary Judgment, the Court denied summary judgment on the CERCLA claim in order to give Plaintiffs an opportunity to establish the presence of hazardous substances on their property. The Court noted that Plaintiffs' expert reports *suggested* that hazardous chemicals were present at the home sites which presented significant risks to health. Given the benefit of more time for discovery and investigation, Plaintiffs have been unable to establish the presence of hazardous substances on the Mayfair properties. Such a lack of proof on an element essential to the CERCLA claim entitles Defendant to summary judgment on the CERCLA claim.

## D. STRICT LIABILITY AND NEGLIGENCE CLAIMS

■ Defendant Armstrong has succeeded in demonstrating the absence of a genuine issue of material fact regarding the element of causation. Plaintiffs have produced no evidence of a causal link sufficient to withstand summary judgment on the strict liability and negligence claims. *See Early–Gary, Inc. v. Walters*, 294 So.2d 181, 186 (Miss.1974) (under Mississippi law, in strict liability and negligence cases, plaintiff has burden to prove injury was caused by acts or omissions of defendant). Without some proof to support the element of causation, the strict liability and negligence claims must fail. Summary judgment is, accordingly, granted on the strict liability and negligence claims.

## E. NUISANCE CLAIM

■ In its Memorandum Opinion and Order dated May 17, 1990, the Court dismissed Plaintiffs' nuisance claim. The Court observed at that time that nuisance is one party's unreasonable interference with the use and enjoyment of one's property. Plaintiffs' first nuisance claim is predicated on the alleged prior dumping of hazardous wastes on their land, resulting in present diminution in the value of Plaintiffs' properties. Plaintiffs, in their Second Amended Complaint, realleged that Defendant is liable for creating a nuisance: "[T]he defendant's actions in using their land for the manufacture of tires has caused the land of plaintiffs to become contaminated." The common law of nuisance does not protect a landowner from interference or harm resulting from a previous use of his property by a prior landowner. *See Philadelphia Electric Co. v. Hercules, Inc.*, 762 F.2d 303 (3d Cir.), *cert. denied*, 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985) (prior owner and producer of wastes not liable to successors in title). Plaintiffs' claims involve a previous use of property, and, furthermore, Armstrong was not a previous owner of the properties. Accordingly, the Court grants summary judgment on Plaintiffs' nuisance claims.

## F. DIMINUTION IN VALUE OF PROPERTY CLAIM

Plaintiffs "filed this case in order to seek damages for the diminution of their property value which has occurred as a result of the learning that remaments [sic] of defendant's waste stream are present under their homesteads." Their claim is for the alleged decline in the market value of their property caused by a stigma attached to their property. Defendant asserts that Plaintiffs' residences and lots have not been damaged or devalued by any action of Armstrong.

Plaintiffs' proof of property damage is the testimony of their real estate expert, William Upchurch. Regarding the Berry and Prater lots, Upchurch's testimony is that the property values have decreased because people have discussed the possibility of the presence of waste which, in turn, has caused a stigma to attach to the properties. Upchurch maintains that, absent the stigma attached to the Berry and Prater properties, the Berry property is worth $36,500.00 and the Prater property is worth $51,000.00. Upchurch says that the stigma reduces this appraisal 67% to 72%. Defen-

dant observes that Upchurch has not detected structural damages to the Prater and Berry residences that caused him to deflate their appraisals. Upchurch has not devalued the residences because hazardous or dangerous chemicals have been detected on the Berry and Prater lots. His sole reason for devaluing the residences is the alleged existence of a "stigma" attached to the properties. Defendant contends that this perceived property value reduction is not a compensable damage to property under Mississippi law.

No Mississippi case has addressed the issue of recovery for reduced market value caused by stigma. Defendant, however, cites *Dennery v. Hughes*, 214 Miss. 687, 59 So.2d 316 (1952), as indicating that this would not be a compensable damage under Mississippi law. In *Dennery* the plaintiffs sought to enjoin the establishment of a cemetery in the vicinity of their homes, alleging that the cemetery would cause them to suffer irreparable damage to their property values. The Mississippi Supreme Court held that there is no private nuisance "when the only basis of complaint is that the market and rental value of neighboring residential property is lowered because of the depressing psychological influence which a cemetery exerts." *Id.* 59 So.2d at 318. Plaintiffs' only allegation and proof of damage is Upchurch's opinion that a stigma—a "depressing psychological influence"—has diminished the market value of the property. Plaintiffs point out that *Dennery* further states that a cemetery would be a nuisance if drainage from the cemetery would contaminate the waters of adjoining property owners. As discussed above, Plaintiffs have not presented sufficient proof on the presence of the alleged hazardous wastes on Plaintiffs' properties in order to survive summary judgment on the toxic waste claims. The proof presented on the contamination issue is insufficient. Upchurch is clear that Plaintiffs' alleged property damage is not based on any actual damage to property. Plaintiffs rely on a law review article which cites a case requiring proof of physical damage prior to awarding damages for devaluation.

*Love Petroleum Co. v. Jones*, 205 So.2d 274, 275 (Miss.1967).

 The cases cited by both parties lead the Court to the conclusion that the Supreme Court of Mississippi, if presented with this issue, would hold that a market stigma is not a compensable damage absent a confirmed physical property damage or a confirmed threat of physical property damage. In the instant case, the appraisal reduction is based purely on the residents' and potential buyers' beliefs that there are dangerous chemicals in the area causing health problems. However, Plaintiffs has not identified any such chemicals or substances in the Mayfair subdivision. Accordingly, the property damage claim is dismissed.

In their Memorandum Brief in Opposition to Armstrong's Second Motion for Summary Judgment, Plaintiffs maintain that their Amended Complaint alleges a trespass claim. A review of all three Amended Complaints reveals that Plaintiffs have not alleged a claim for trespass. The Court, therefore, need not consider the issue.

IT IS, THEREFORE, ORDERED that the Motion of Defendant Armstrong Rubber for Summary Judgment is granted on all claims and that this cause of action is accordingly dismissed.

SO ORDERED.