United States Court of Appeals,

Fifth Circuit.

Nos. 91-1934, 91-1996.

James BERRY, Sr., et al., Plaintiffs,

James Berry, Sr., et al., Plaintiffs-Appellants,

v.

The ARMSTRONG RUBBER COMPANY, Defendant-Appellee.

J. Wesley COOPER, et al., Plaintiffs-Appellants,

v.

The ARMSTRONG RUBBER COMPANY, Defendant-Appellee.

May 3, 1993.

Appeals from the United States District Court for the Southern District of Mississippi.

Before REYNALDO G. GARZA and GARWOOD, Circuit Judges, and ROSENTHAL, District Judge.[*]

ROSENTHALDistrict Judge:

1. Background

This is a consolidated appeal from a grant of summary judgment in favor of defendant Armstrong Rubber Company ("Armstrong") in two separate suits. Armstrong operated a tire manufacturing plant in Natchez, Mississippi, from 1937 through 1987, when it sold the plant. Plaintiffs are individuals who live in Natchez, Mississippi. It is undisputed that from 1937 through the 1970s, Armstrong "dumped" waste materials from this plant into various sites around the Natchez area. It is also undisputed that several of these sites are located near the areas in which plaintiffs live. Plaintiffs claim that this dumping left hazardous chemicals on their land and in their groundwater. Armstrong denies the presence of any harmful level of hazardous materials on plaintiffs' land or in their water.

In 1988, plaintiffs sued Armstrong in two separate cases, *James Berry, et al. v. Armstrong*

[*]District Judge of the Southern District of Texas, sitting by designation.

*Rubber Co.,* Civ.A. No. J88-0653(B), U.S. District Court, S.D. Miss., Jackson Division, and *J. Wesley Cooper, et al. v. Armstrong Rubber Co.,* Civ.A. No. J88-0464(L), U.S. District Court, S.D. Miss., Jackson Division, alleging a right to recovery under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601-9675, and under Mississippi state law causes of action for nuisance, trespass, personal injury, strict liability, negligence, and property damage.[1]  After almost two years of discovery, the district court dismissed plaintiffs' claims, holding that plaintiffs had not produced sufficient evidence that hazardous substances were present or that such substances caused any injuries.  780 F.Supp. 1097.  We affirm the rulings of the trial court.

2. Standard of Review

This court reviews the grant of summary judgment *de novo,* applying the same Rule 56 standards employed by the district court.  *See Stout v. Borg-Warner Corp.,* 933 F.2d 331, 334 (5th Cir.1991).  Evidentiary rulings are reviewed under a manifest error standard.  *Christophersen v. Allied-Signal Corp.,* 939 F.2d 1106, 1109 (5th Cir.1991), *cert. denied* --- U.S. ----, 112 S.Ct. 1280, 117 L.Ed.2d 506 (1992);  *Viterbo v. Dow Chem. Co.,* 826 F.2d 420 (5th Cir.1987).  If the district court's ruling depended on the admissibility of certain evidence, appellate review is a two-tiered process.  First, we review the evidentiary rulings under the manifest error standard, then review the trial court's summary judgment decision *de novo.*  *Christophersen v. Allied-Signal Corp.,* 939 F.2d 1106, 1109.

In granting a motion for summary judgment, the district court is not to weigh the evidence or make credibility choices.  *Orthopedic & Sports Injury Clinic v. Wang,* 922 F.2d 220, 223 (5th Cir.1991).  This does not mean, however, that the existence of any factual dispute will foreclose summary judgment.  The dispute must be genuine, with facts on both sides of a material issue, before

---

[1]The *Berry* lawsuit initially included claims under other federal environmental acts and state common law nuisance claims.  On May 17, 1989, the district court dismissed plaintiffs' statutory claims under the federal environmental acts and plaintiffs' state common law nuisance claims. Plaintiffs do not appeal the dismissal of the statutory claims under federal environmental acts. The district court granted Armstrong's second motion for summary judgment on July 30, 1989, dismissing all claims.

a court must submit it to a jury. *See Lewis v. Glendel Drilling Co.,* 898 F.2d 1083, 1088 (5th Cir.1990).

The trial court held that much of plaintiffs' expert testimony lacked sufficient probative value under Rule 703 of the Federal Rules of Evidence to overcome summary judgment for Armstrong. *Viterbo v. Dow Chem. Co.,* 826 F.2d at 422. Rule 703 does not "make summary judgment impossible whenever a party has produced an expert to support its opinion." *Viterbo v. Dow Chemical Co.,* 826 F.2d at 422 (*quoting Merit Motors, Inc. v. Chrysler Corp.,* 569 F.2d 666, 673 (D.C.Cir.1977)). If the basis for the expert's opinion is so unreliable that no reasonable expert could base an opinion on that data, the opinion may be excluded in the district court's determination of whether there is a genuine issue regarding an essential element of the claim. *Viterbo v. Dow Chemical Co.,* 826 F.2d at 422; *see also Orthopedic & Sports Injury Clinic v. Wang,* 922 F.2d 220, 225 (5th Cir.1991); *Christophersen v. Allied-Signal Corp.,* 939 F.2d at 1113-14.

We conclude that the district court correctly granted defendant's summary judgment motion. Because the evidence presented by the Berry and the Cooper plaintiffs is in some respects distinct, we analyze the issues of proof as to each case separately.

3. Berry

Plaintiffs James Berry, Sr., James Berry, Jr., Dwight Berry, and Tangela Berry, live at 103 Downing Rd. in the Mayfair Subdivision in Natchez. Plaintiffs Charles and Bessie Prater live across the street at 102 Downing Rd. These plaintiffs, the "Berry plaintiffs," claim that their homes rest on top of and/or near fill material containing toxic wastes left by Armstrong, and that their health and property values have suffered as a result.

It is undisputed that these plaintiffs' lots have never been tested to determine whether any toxic chemicals are present. Plaintiffs admit that there is no test data of soil or water taken from their lots. Plaintiffs instead relied on expert testimony to provide circumstantial evidence of the presence of hazardous substances in a quantity sufficient to cause the alleged harm.

One of plaintiffs' experts, Dr. Ralph Pike, a chemical engineer, reviewed tests of soil samples by the Mississippi Bureau of Pollution Control (BPC) and the United States Environmental Protection

Agency (EPA). These samples were taken from lots along Hampton Court, approximately one-half mile northwest of the Mayfair subdivision. Dr. Pike reviewed these samples and stated in an affidavit that it was "more probable than not" that the chemicals found in the Hampton Court area were produced by the "tire manufacturing industry in Natchez, Mississippi," and that it was "more probable than not" that some of the chemicals were hazardous and/or toxic materials. (Vol. III, p. 569).

Dr. Pike admitted that he did not know where Mayfair was, whether any testing had been done there, or where plaintiffs lived. (Vol. III., p. 632-33). It is undisputed that he relied on data from tests he did not do, of soil taken from property not involved in this case. It is also undisputed that based on these same tests, the BPC concluded that "there was no imminent threat to the public health or the environment and that no type of emergency response action was warranted." (Vol. IV, p. 1135).

Dr. Pike also reviewed tests by the Mississippi Office of Pollution Control (OPC), the successor to the BPC, in the Hampton Court, George F. West Boulevard, and Mayfair areas. Soil vapor samples taken at two lots in Mayfair, neither of which belonged to plaintiffs, indicated the presence of trace amounts of hydrogen sulfide. (Vol. IV, pp. 116-17). One sample taken from a lot located a quarter mile northwest of Mayfair showed a hydrogen sulfide concentration over 200 times greater than that found in Mayfair. The OPC found that this was due to a gas pipeline leak and the presence of sewer and store drains. (Vol. IV, p. 1141). The OPC concluded that "the site does not pose any significant risk to the public health or the environment." (Vol. IV, p. 1143). Dr. Pike stated by affidavit that the hydrogen sulfide could be a by-product of the tire manufacturing waste stream. (Vol. IV, p. 1123). He did not, however, dispute the OPC's conclusion that no threat to health or the environment was present in the area.

Plaintiffs also relied on the expert testimony of Wilma A. Subra, a chemist, who concluded that it was "more probable than not" that hazardous components of Armstrong's waste stream were deposited in the land fills on which plaintiffs' homes were built. (Vol. III, p. 810-12). Like Dr. Pike, Ms. Subra did not conduct any chemical analyses of soil samples from plaintiffs' home sites. Unlike Dr. Pike, she did not even base her conclusions on any chemical analysis or testing performed by a

third party. (Vol. III, p. 653-54). Instead, she relied solely on physical observations of waste at a site unrelated to this case, with no chemical analysis of the waste to determine whether it was toxic. *Id.*

Beyond the opinions of their experts, there is little in the summary judgment record to evidence the presence of hazardous wastes on plaintiffs' land. Plaintiff James Berry stated in his deposition that he saw "rubber and stuff" dug up from his back yard. (Vol. III, p. 607) Plaintiffs point to the testimony of various witnesses that they either participated in or saw Armstrong dumping tires and barrels in the "general area" of plaintiffs' homes some 30 to 40 years earlier. Based on such evidence, plaintiffs and their experts "surmise" that wherever Armstrong disposed of tires, it "probably" also disposed of toxic chemicals. Because tires and barrels were removed from James Berry's lot, plaintiffs asked the district court to infer that chemicals from the Armstrong plant were also present on plaintiffs' lots. (Vol. III, pp. 810-12).

The plaintiffs' property damage claim was based on the testimony of William Douglas Upchurch, a real estate expert. He stated that in the Natchez real estate market, the plaintiffs' properties were perceived to be contaminated by toxic wastes, and concluded that a negative market stigma significantly reduced the market values of plaintiffs' properties. (Vol. III, p. 661-69). However, this testimony provided no evidence that toxic or hazardous wastes were present on plaintiffs' property.

4. Cooper

The "Cooper plaintiffs," Wesley Cooper, his wife, Margaret Cooper, and his mother, Estelle Cooper, live on property located two-thirds of a mile south-southeast from a waste disposal site that Armstrong used from 1939 to the early 1970s. This site, known as the "Cain site," is separated from the Cooper property by another tract of land. Plaintiffs Warren Benson and his wife, Leslie Mae Benson, live on property across a public road from the Coopers.

Wesley Cooper claims that hazardous materials from the Cain site have contaminated his private well water and resulted in his stomach cancer. He also claims damages from a reduction in the value of his property. The Bensons do not own the property on which they live, but claim they

have suffered personal injury due to exposure to the Cain site.

Plaintiff James Carter lives on and owns property known as the "Carter site." This is next to the "Batieste site," where Armstrong sought and paid for permission to dump wastes. Carter acknowledges that he gave Armstrong permission to dump tires on his property, for which Armstrong paid. However, Carter claims that Armstrong also dumped barrels containing toxic chemicals without his knowledge, and that this dumping reduced the value of his land.

The summary judgment record contains the results of numerous tests performed by state and federal agencies. These tests found no evidence that the Cain, Batieste, and Carter sites contaminated the adjacent properties, property owned by plaintiffs. The investigation of the Cain site began on November 6, 1986. Following initial testing, the United States EPA Region Four Technical Assistance Team (TAT) took samples at the Cain and Carter sites. On July 11, 1987, an EPA representative advised the State Bureau of Pollution Control that the sampling indicated no contaminants that "approach a level of concern." The U.S. Agency for Toxic Substances and Disease Registry analyzed the same data and concluded that the ground water posed no public health threat.

On October 17, 1988, the chief of the Hazardous Waste Division of the BPC stated as follows:

> As indicated by the ongoing investigation and the outstanding orders, the BPC is of the opinion that the Armstrong sites warrant further investigation, but the data collected and analyzed to date indicates that there is no imminent threat to human health at these sites.

(Vol. 1, R. 0045)

On July 20, 1989, a representative of the Hazardous Waste Division of Mississippi Department of Environmental Quality (DEQ), wrote to each private well owner in the area advising that the water was safe to drink and that the chemicals identified in water were "naturally occurring" and within normal levels. Studies of the Cain site continued. (Vol. 1, R. 38-346; Vol. 7, R. 2509-2530). As of November 3, 1990, the Fidelity Tire Company, which purchased the Armstrong plant in 1987, had installed eight monitoring wells at these sites, taken over fifteen soil samples, over fifty soil borings, and over forty groundwater samples, at a cost of $520,000. (Vol. 7, R. 2506-2531; Vol. 1, R. 38-346).

Plaintiffs produced no direct evidence that Armstrong dumped any wastes on the Cooper or Benson land. Their only basis for alleging that hazardous chemicals were present on their land was that chemicals were dumped in other sites, travelled into the groundwater, and contaminated plaintiffs' soil and well water. (Vol. VI, p. 2189). Plaintiffs' expert, Dr. Nolan Aughenbaugh, a professor of geotechnical engineering, stated that certain unusual geologic conditions could exist which could allow the migration of toxic chemicals to plaintiffs' land. His conclusion was not based on any studies done on plaintiffs' land.

The district court found that Dr. Aughenbaugh's testimony was in the area of geochemistry or hydrogeology, which require the use of models to determine the movement of water-borne substances. (Vol. X, p. 4139-4140). Dr. Aughenbaugh had no expertise or credentials in that area and admitted that he did not know how to use such models. (Vol. 6, p. 2309). The district court noted that the experts from the state and federal agencies who did perform tests concluded that the groundwater under the Armstrong dumpsites flowed northwest, *toward* the Mississippi River and *away* from plaintiffs' land. (Vol. X, p. 4143-44). The district court rejected Dr. Aughenbaugh's contrary "speculations" under Rule 703, holding them insufficient to create a genuine issue of fact. (Vol. X, p. 4140).

Dr. Aughenbaugh's testimony provided the only basis for Dr. William George, a toxicologist, and Dr. Lawrence Miller, a medical doctor, to form their opinions. They testified that a causal relationship could exist between exposure to well water and Wesley Cooper's cancer. However, Dr. George agreed with defendant's experts that the chemicals found in Wesley Cooper's well were at such low levels that they posed no health threat. (Vol. 6, R. 2377-80).

Ms. Subra offered the same opinion as she offered in *Berry,* with the same lack of analysis that the district court found disqualifying in *Berry.* William Upchurch also offered his expert opinion as a real estate appraiser on the effect of the perception that toxic substances were present on the Cooper and Carter properties.

5. Admissibility of Expert Testimony

In both *Berry* and *Cooper,* plaintiffs attempted to use expert testimony to raise an inference

that contaminating wastes were present on the plaintiffs' properties. The district court rejected the expert opinions under Rule 703. (Vol. IV p. 1163; A.R.E. 4). This court finds that the district court's evidentiary rulings were not manifestly erroneous.

As this court noted in *Christophersen v. Allied Chemical Corp.,* 939 F.2d 1106, 1110 (5th Cir.1991) (*en banc* ):

> The Federal Rules of Evidence, combined with *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923), provide a framework for trial judges struggling with proffered expert testimony. The signals are not neatly cabined categories, and we disentangle them only to accent the independent significance of each.
>
> (1) Whether the witness is qualified to express an expert opinion, Fed.R.Evid. 702;
>
> (2) whether the facts upon which the expert relies are the same type as are relied upon by other experts in the field, Fed.R.Evid. 703;
>
> (3) whether in reaching his conclusion the expert used a well-founded methodology, *Frye;* and
>
> (4) assuming the expert's testimony has passed Rules 702 and 703, and the *Frye* test, whether under Fed.R.Evid. 403 the testimony's potential for unfair prejudice substantially outweighs its probative value.

939 F.2d at 1110.

Plaintiffs offered the deposition and/or affidavit testimony of five expert witnesses: Dr. Ralph Pike, a chemical engineer; Dr. William George, a toxicologist; Dr. Lawrence Miller, a medical doctor; Dr. Nolan Aughenbaugh, a professor of geotechnical engineering; Wilma Subra, an analytical chemist; and William Upchurch, a real estate appraiser. Armstrong did not challenge the Rule 702 qualifications of these expert witnesses to testify in their specified areas of expertise. Armstrong argued that Dr. Aughenbaugh, Dr. George, and Ms. Subra stepped outside of their areas of expertise. Armstrong also argued that all these experts relied upon improper "facts" of a sort not relied upon by experts in their field and failed to use an accepted methodology, in violation of Rule 703 and *Frye.*

The court correctly noted that Dr. Pike's opinions were not based on tests he performed, or even tests of the properties at issue. Ms. Subra's conclusions were not based on her own expert area of chemical analysis, and were not based on tests of the plaintiffs' properties. Dr. Aughenbaugh testified as a geochemist or hydrogeologist, areas in which he was not qualified, using data and

methodology not recognized by experts in those fields. Dr. George and Dr. Miller relied on the work by these experts to form their opinions as to medical causation. Dr. Miller also reached conclusions that the district court found to be unsupported by accepted methodology. The district court did not commit manifest error in ruling that these experts' opinions were insufficient to overcome summary judgment. *See Brock v. Merrell Dow Pharmaceutical, Inc.,* 874 F.2d 307, 312-13 (5th Cir.1989), *cert. denied* 494 U.S. 1046, 110 S.Ct. 1511, 108 L.Ed.2d 646 (1990).

6. Personal Injury Claims

Only one plaintiff, Wesley Cooper, alleged that he had a specific physical problem resulting from drinking well water polluted from Armstrong dump sites.[2] The summary judgment evidence failed to show harmful levels of any toxic or hazardous substance in the well water. Plaintiffs presented no evidence beyond conclusory allegations that Armstrong caused dangerous levels of any chemical or substance in plaintiffs' groundwater.

Plaintiffs' own expert, Dr. George, acknowledged that exposure to chemicals at the levels found in the Cooper well were too low to cause cancer. (Vol. X, p. 4138). Dr. Miller, plaintiffs' expert physician, agreed that the chemicals found would have to be present in much higher levels to cause stomach cancer. We affirm the district court's ruling that Dr. Aughenbaugh's conclusions are insufficient to create a fact issue as to the presence of toxins on plaintiffs' land. *Viterbo,* 826 F.2d at 422. Dr. George and Dr. Miller's conclusions depended on Dr. Aughenbaugh's testimony. The medical experts also found an inadequate level of chemicals in Cooper's well to cause his cancer and is similarly insufficient to create a fact issue.

Dr. Miller stated that the chemicals would have to be significantly above the background levels revealed in the soil and water testing to cause cancer. (Vol. 6, R. 2390). Dr. George offered similar testimony. (Vol. 6, R. 2377-80). We affirm the district court's grant of summary judgment.

7. CERCLA

A plaintiff must show four elements to establish a claim for relief under CERCLA; 42 U.S.C.

---

[2]Only the *Cooper* plaintiffs appeal the district court's grant of summary judgment as to their personal injury claims. The *Berry* claimants do not appeal on this issue. (Appellant's Reply Brief at 1).

§§ 9601-9675:

1. the site in question is a "facility";

2. the defendant is a responsible person;

3. a "release" or "threatened release" of a "hazardous substance" occurred; and

4. the "release" or "threatened release" has caused the plaintiff to incur response costs.

*Amoco Oil Co. v. Borden, Inc.,* 889 F.2d 664, 668 (5th Cir.1989).

The district court dismissed the plaintiffs' CERCLA claims because, despite almost two years of discovery, plaintiffs failed sufficiently to prove the presence of any hazardous substances on their property to withstand summary judgment. A site cannot be a facility unless a hazardous substance has been "deposited, stored, disposed of, or placed, or otherwise came to be located ..." at the site. *Amoco,* 889 F.2d at 668, n. 4. As a matter of law, plaintiffs cannot meet the first requirement of a CERCLA claim. In both *Berry* and *Cooper,* plaintiffs failed to provide evidence of tests performed on plaintiffs' properties that showed particularized findings that hazardous or toxic substances were present. The district court's summary judgment dismissing plaintiffs' CERCLA claim is therefore affirmed.

8. Mississippi Trespass and Nuisance Claims

Plaintiffs point to *Phillips v. Davis Timber Co., Inc.,* 468 So.2d 72 (Miss.1985), to support their common law nuisance and trespass claims. In that case, the Mississippi Supreme Court held that a plaintiff could state a claim for nuisance even if the levels of toxins found on the land did not reach dangerous levels. However, a plaintiff must present evidence of an invasion by defendant in order to withstand summary judgment. *Phillips,* 468 So.2d 72, 79. The *Cooper* and *Berry* plaintiffs failed to show such evidence of an "invasion" by Armstrong to withstand summary judgment.

A cause of action for public nuisance is predicated on a showing that the defendant's activities have injured a public right. *See Comet Delta, Inc. v. Pate Stevedore Co. of Pascagoula, Inc.,* 521 So.2d 857, 860 (Miss.1988). The summary judgment record of testing by many agencies and organizations showed no threat to human health. Plaintiffs presented no evidence of test results showing a level of pollutants on plaintiffs' property that could endanger the public. The summary

judgment dismissing the nuisance claim is affirmed.

## Property Damage

Plaintiffs' expert appraiser, William Upchurch, contended that the stigma attached to plaintiffs' property had significantly reduced its value. The district court concluded that even if this expert testimony was accepted as true, plaintiffs could not recover under Mississippi law for reduced market value caused by a "stigma" absent some physical damage to plaintiffs' land caused by the defendant.

Plaintiffs point to two Mississippi cases to support the claim that a decrease in market value caused by a "stigma" is compensable. *See Phillips v. Davis Timber Co.,* 468 So.2d 72, 78 (Miss.1985); *Bynum v. Mandrel Ind., Inc.,* 241 So.2d 629, 633 (Miss.1970). In both these cases, the defendant physically damaged the plaintiff's property. Plaintiffs have cited no case, and the court has found none, holding that Mississippi common law allows recovery for a decrease in property value caused by a public perception without accompanying physical harm to the property. The district court's dismissal of the state law property claims is affirmed.

## CONCLUSION

Despite two years of discovery, plaintiffs failed to provide the district court with sufficient admissible evidence that pollutants were on plaintiffs' land or in their groundwater to establish a genuine issue of material fact. Plaintiffs' conclusory, unsupported allegations are insufficient to avoid summary judgment. The opinion of the district court is

AFFIRMED.