UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 95-60369
Summary Calendar
_____

QUINELL SHUMPERT,

Plaintiff-Appellant,

versus

CITY OF FULTON, MISSISSIPPI; BOYCE MCNEECE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Mississippi

(1:93CV87-B-D)
_____

December 15, 1995

Before DAVIS, BARKSDALE, and DeMOSS, Circuit Judges.

PER CURIUM:[1]

Quinell Shumpert appeals the summary judgment granted the City
of Fulton in his race-based employment discrimination action.  We
**AFFIRM.**

I.

The City hired Shumpert, a black male, as a police officer in
January 1992.  He was discharged approximately two months later,
when the City determined that his participation in an extramarital

_____

[1]     Local Rule 47.5.1 provides:  "The publication of opinions that
have no precedential value and merely decide particular cases on
the basis of well-settled principles of law imposes needless
expense on the public and burdens on the legal profession."
Pursuant to that rule, the court has determined that this opinion
should not be published.

affair violated the Police Department's regulations governing the conduct of its officers.

When Shumpert applied for the position with the City's police department, Alderman Boyce McNeece admittedly commented during a meeting of the Board of Aldermen to consider Shumpert's application that, "We [the city] don't need that nigger".[2] The Board voted to hire Shumpert.[3]

Shumpert alleged that two other aldermen also made racially derogatory remarks regarding him, and that those remarks were overheard by Fulton volunteer fireman Joey Steele. In his deposition, Steele denied that the comments he overheard were racially derogatory, and denied that they concerned Shumpert.

During his tenure with the Fulton police force, Shumpert embarked on an extramarital relationship with a female who worked as a clerk in the Itawamba County Tax Assessor's Office. Shumpert admitted to the relationship when questioned by Chief of Police Ray Barrett. Barrett, along with Alderman Cornelius Clemons, met with Shumpert, explained that his conduct violated the Department's Regulations, and offered him the option of resigning before being dismissed, which Shumpert refused. Shumpert was suspended without

[2] As the district court noted, McNeece's apparent animosity toward Shumpert may have originated over an incident that occurred while Shumpert was employed as a member of the Itawamba Sheriff's Department, in which Shumpert arrested McNeece's son on a charge of driving under the influence and refused to drop the charges despite McNeece's urging.

[3] The vote at the meeting was unanimous. However, McNeece later changed his vote as a matter of record to become the lone dissenter.

pay until the next meeting of the Board of Aldermen, at which the Board voted to terminate his employment.

Shumpert disputes that other officers were fired for pursuing extramarital relationships. However, Fulton police officer James Brown had been given the opportunity to resign or be fired for his extramarital involvement in February 1992. Shumpert asserted that Brown had in fact been discharged by Barrett because he had not supported Barrett's candidacy for Police Chief. Brown was white.

## II.

Pursuant to 42 U.S.C. § 1981, Shumpert asserts that racial bias was the actual motivation for his discharge. In the alternative, pursuant to 42 U.S.C. § 1983, he asserts that, assuming his extramarital relationship formed the basis for his dismissal, discipline for such a relationship violated his First Amendment right to free association.

We review a summary judgment *de novo*. **Berry v. Armstrong Rubber Co.**, 989 F.2d 822, 824 (5th Cir. 1993), *cert. denied*, __ U.S. __, 114 S. Ct. 1067 (1994). While the district court is not to weigh the evidence or make credibility choices, this, of course, does not mean that the existence of *any* fact dispute forecloses summary judgment. Rather, a genuine dispute must exist regarding a *material* fact to preclude summary judgment. **Id**. at 824.

## A.

Shumpert asserts that, even assuming that the extramarital relationship was the basis for his discharge, such relationships are encompassed by the privacy and associational rights protected

- 3 -

by the First Amendment. He asserts further that the disputed criminality of the conduct forms a material fact issue.

In *Shawgo v. Spradlin*, 701 F.2d 470 (5th Cir.), *cert. denied*, 464 U.S. 965 (1983), this court held that relationships outside of marriage do not garner absolute constitutional protection. Specifically, our court found that, when such relationships occur between government employees, any right to such relations that might normally exist may be properly tempered by a state's heightened interest in regulating the conduct of its employees. *Id*. at 482-83 (holding that police officers' claim of First Amendment protection from discipline for their personal, off-duty association "fails to take into account the fact that the right to privacy is not unqualified ... and that the state has `more interest in regulating the activities of its employees than the activities of the population at large'") (citations omitted).

In *Shawgo*, the court explained that, to sustain a constitutional attack on police personnel regulations, a plaintiff must establish that no rational relationship exists between the regulation and the safety of people and property that police are employed to protect. *Id*. at 483. The regulation at issue is found in the Police Department's Standard Operating Procedures and General Rules and Regulations and requires, *inter alia*, that police officers maintain their private lives to be "unsullied as an example to all".[4] The City could rationally advance the legitimate

---

[4]    Shumpert does not assert that the ethics code is overbroad or void for vagueness. The regulations provide in pertinent part:

law enforcement goal of securing the community's confidence in the integrity of its police officers by having this requirement.

Because the we hold that the conduct for which Shumpert was dismissed is not protected by the First Amendment in this context, without regard to whether the conduct was criminally proscribed, no material fact issue is created by whether Shumpert's extramarital relationship violated Miss. Code Ann. § 97-29-1.[5]

B.

We analyze § 1981 claims of race-based discrimination in employment by using the framework fashioned to analyze such claims under Title VII. *See* **St. Mary's Honor Center v. Hicks**, 113 S. Ct. 2742, 2746-47 n. 1 (1993) (citing **Patterson v. McClean Credit Union**, 491 U.S. 164, 186, (1989)). Under that well-established framework, the plaintiff is burdened with proving a *prima facie* case of discrimination by a preponderance of evidence; from the establishment of the *prima facie* case, an inference of

---

Code of Ethics

I WILL keep my private life unsullied as an example to all; ... Honest in thought and deed in both my personal and official life, I will be exemplary in obeying the laws of the land and the regulations of my department.

Discipline

For the purpose of definition, the following constitute misconduct.... Engaging in any conduct unbecoming of a Police Officer.

[5] While the parties dispute the application of Miss. Code Ann. §97-29-1 to Shumpert's conduct, we note that Mississippi criminal law does proscribe sex between unmarried persons, further supporting the City's interest in preventing officers from engaging in such conduct.

- 5 -

discrimination arises. ***Texas Dept. of Community Affairs v. Burdine***, 450 U.S. 248, 254 (1981). In order to rebut the inference, the employer must articulate a legitimate, non-discriminatory reason for the challenged action. ***Id.*** If the defendant has presented evidence of a legitimate motivation, then, as our cases make clear, the plaintiff retains the burden of persuasion regarding intentional discrimination. ***Id***. at 256.

For evidence that his discharge was racially biased, Shumpert offers the earlier quoted comment by Alderman McNeece at the aldermen's meeting during which Shumpert's employment application was considered. However, even assuming that the statement establishes racial bias *and* that the bias continued until the time Shumpert was dismissed, we cannot say that McNeece's bias *caused* Shumpert's dismissal, because McNeece is only one of five aldermen. *See* ***Bowen v. Watkins***, 669 F.2d 979, 985 (5th Cir. 1982) (single vote does not constitute causation when same conclusion would have been reached without tainted vote).

Shumpert's assertion that witness Steele had overheard two other aldermen is equally unhelpful to advance his case. As discussed earlier, Steele did not testify that he heard such comments, and Shumpert's own subjective assertions are not sufficient to create a fact issue regarding discriminatory intent. ***Elliot v. Group Medical & Surgery Serv.***, 714 F.2d 556, 567 (5th Cir 1983), *cert. denied*, 467 U.S. 1215 (1984).[6]

---

[6] Shumpert's testimony that Steele had told him of hearing the conversation, and that Steele had, at the time, described overhearing racially derogatory statements does not create a fact

Assuming, *arguendo*, that Shumpert established a *prima facie* case, the City provided a legitimate explanation for the termination of his employment -- Shumpert's admitted violation of the department's regulations.

Shumpert seeks to discredit this explanation by asserting that no other officers were similarly dismissed. Shumpert rejects the defendants' evidence that a white officer, was, in fact, dismissed for pursuing an extramarital relationship, and asserts, instead, that the officer's preference for a Chief of Police candidate other than Barrett motivated Barrett's decision to fire the officer. Shumpert offers no direct evidence to support this theory, while, by contrast, the defendants offered a transcript of the interview during which the other officer's employment was terminated.

In sum, on this issue, there is no material fact dispute, and the City is entitled to judgment as a matter of law.

III.

For the foregoing reasons, the judgment is

**AFFIRMED.**

---

issue. Evidence must be admissible to create an issue of fact. *E.g., **Beijing Metals v. Minerals Import/Export, Inc.***, 993 F.2d 1178 (5th Cir. 1993). The statement would be inadmissible as hearsay, unless introduced to impeach Steele's testimony, in which case the evidence could be used only to impeach, not as substantive evidence of the truth of the matter stated.