United States Court of Appeals,

Fifth Circuit.

No. 94-41152.

CONCERNED CITIZENS FOR EQUALITY, Plaintiff-Appellant,

v.

John McDONALD, County Judge, Joe Ware, Commissioner, Marcelle Adams, Commissioner, J.R. Burns, Commissioner, and Kell Bradford, Commissioner, Defendants-Appellees.

Sept. 11, 1995.

Appeal from the United States District Court for the Eastern District of Texas.

Before SMITH, WIENER and DeMOSS, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellant Concerned Citizens For Equality (CCE) brought this suit against Defendants-Appellees the County Commissioners of Orange County, Texas (Commissioners), alleging that the current four-precinct, single-member structure used to elect Constables and Justices of the Peace in Orange County (JP Precincts) dilutes black voting strength and thus violates § 2 of the Voting Rights Act (VRA).[1]

The Commissioners moved for summary judgment, contending that, as blacks were not a majority in any of the four existing JP Precincts, CCE could not satisfy requirements of *Thornburg v. Gingles.*[2] CCE countered that if Orange County were divided into five JP Precincts (rather than the four that presently exist), CCE

---

[1]42 U.S.C. § 1973 (1988).

[2]478 U.S. 30, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986).

could, under these hypothetical facts, satisfy the *Gingles* preconditions. The district court agreed with the Commissioners' contention that, under the existing system, CCE could not satisfy the first *Gingles* precondition, and reasoned further that the Supreme Court's recent decision in *Holder v. Hall*[3] foreclosed consideration of CCE's hypothetical five-precinct model as an alternative way around that aspect of *Gingles.* The district court therefore granted partial summary judgment in favor of the Commissioners and against CCE, dismissing its § 2 voting rights claim. On appeal from the court's Rule 54(b) judgment, CCE asks us to reverse the district court for erroneously applying *Holder* to a dilution claim involving a judicial election. We decline CCE's request, and, instead, affirm the district court's judgment.

## I.

### FACTS AND PROCEEDINGS

The facts and proceedings in this case were elaborately and articulately set forth by the district court.[4] Thus, we highlight only the essential facts.

A. PROCEDURAL POSTURE

CCE, an unincorporated association of black voters residing in Orange County, brought this suit against the Commissioners. CCE's complaint alleged that the current judicial precinct structure, consisting of four single-member JP Precincts, minimized black

---

[3]--- U.S. ----, 114 S.Ct. 2581, 129 L.Ed.2d 687 (1994).

[4]*See Concerned Citizens For Equality v. McDonald,* 863 F.Supp. 393 (E.D.Tex.1994).

2

voters' opportunity to participate in the political process and to elect representatives of their choice, and thus diluted their voting strength in violation of § 2 of the VRA[5] and the Fourteenth and Fifteenth Amendments.[6]  The Commissioners answered and moved for summary judgment on the § 2 voting rights claim, explaining that, under the current system, blacks did not constitute a majority in any of the JP Precincts.  As a consequence, urged the Commissioners, CCE failed to satisfy the first of the three *Gingles* preconditions.[7]  CCE responded by filing its own motion, seeking summary judgment on its § 2 voting rights claim and arguing that if a hypothetical fifth JP Precinct (a majority-black precinct) were created, CCE could then satisfy the first *Gingles* precondition and state a claim for dilution under § 2 of the VRA.  In essence, CCE challenged the Commissioners' decision to retain the four-precinct system rather than change to CCE's hypothetical five-precinct electoral system for electing Constables and Justices of the Peace in Orange County.

B. THE DISTRICT COURT'S OPINION

As the Supreme Court had a similar case under advisement at

_____

[5]28 U.S.C. § 1973.

[6]U.S. Const.Amend. XIV & XV.

[7]*Thornburg v. Gingles,* 478 U.S. 30, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986), requires a showing that (1) "the minority group ... is sufficiently large and geographically compact to constitute a majority in a single-member district," 478 U.S. at 50, 106 S.Ct. at 2766, (2) that the minority group is politically cohesive, and (3) that the majority group "votes sufficiently as a bloc to enable it—in the absence of special circumstances ... usually to defeat the minority's preferred candidate."  *Id*. at 51, 106 S.Ct. at 2766-2767.

the time of these cross-motions for partial summary judgment, the district court delayed its ruling until the Court issued its opinion in *Holder v. Hall.*[8]  Interpreting *Holder,* the district court held that, absent a benchmark, "[n]o vote dilution claim exists under § 2 of the Voting Rights Act if expansion of the size of the existing governing body must occur to satisfy the first *Gingles* factor."[9]  As CCE's § 2 voting rights claim had thus run aground and foundered on the rocks and shoals of *Holder,* the district court entered partial summary judgment pursuant to Fed.R.Civ.P. 54(b) in favor of the Commissioners, dismissing CCE's voting rights claim.[10]  CCE timely appealed.

C. CCE'S ARGUMENTS ON APPEAL

On appeal, CCE advances two arguments in an effort to salvage its foundered ship.  First, CCE attempts to distinguish *Holder* in the following manner:  (1) *Holder* applies to a "governmental body";  (2) the Constables and Justices of the Peace in Orange County are not a "governmental body";  (3) therefore *Holder* is inapplicable.  Second, CCE contends that even if *Holder* were applicable, the Texas Constitution supplies that opinion's necessary "benchmark," allowing us to consider whether the size of the governmental authority dilutes black voting strength in Orange County.

---

[8]--- U.S. ----, 114 S.Ct. 2581, 129 L.Ed.2d 687 (1994).

[9]*Concerned Citizens,* 863 F.Supp. at 404 (citing *Holder,* --- U.S. at ----, 114 S.Ct. at 2586).

[10]The separate claims under the Fourteenth and Fifteenth Amendments have yet to be addressed by the district court.  These constitutional claims are not before us and we neither express nor imply an opinion on the merits of these claims.

4

II.

ANALYSIS

A. STANDARD OF REVIEW

We review the district court's grant of a motion for summary judgment de novo, applying the same standard as the district court applied.[11] The parties have raised no questions of fact; this appeal involves only questions of law. Questions of law are decided just as they are outside of the summary judgment context: de novo.[12]

B. SECTION 2 OF THE VOTING RIGHTS ACT

Section 2 of the VRA prohibits any "qualification or prerequisite to voting or standard, practice, or procedure ... which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color" or membership in a language minority group.[13] To prove that using a multimember district dilutes minority votes in violation of § 2, members of a protected minority group must establish three "necessary preconditions."[14] "First, the minority group must be ... sufficiently large and geographically compact to constitute a

---

[11]*Berry v. Armstrong Rubber Co.,* 989 F.2d 822, 824 (5th Cir.1993); *Fraire v. City of Arlington,* 957 F.2d 1268, 1273 (5th Cir.) (citations omitted), *cert. denied,* --- U.S. ----, 113 S.Ct. 462, 121 L.Ed.2d 371 (1992).

[12]*Walker v. Sears, Roebuck & Co.,* 853 F.2d 355, 358 (5th Cir.1988).

[13]42 U.S.C.A. § 1973(a).

[14]*Thornburg v. Gingles,* 478 U.S. 30, 50, 106 S.Ct. 2752, 2766, 92 L.Ed.2d 25 (1986).

majority in a single-member district."[15]   "Second, the minority group must be ... politically cohesive."[16]   And third, the majority must vote "sufficiently as a bloc to enable it ... usually to defeat the minority's preferred candidate."[17]   Each of these preconditions is necessary;   the absence of any one of them precludes a § 2 dilution violation.[18]

As blacks do not constitute a majority in any of the four extant JP Precincts in Orange County, CCE cannot satisfy the first *Gingles* precondition.  In an attempt to avoid this fatal defect, CCE argues that if a hypothetical fifth, majority-black precinct were created, CCE could then satisfy the *Gingles* preconditions. This argument, however, is precluded by *Holder.*

C. HOLDER V. HALL

*Holder* involved a challenge to the size—in number of Commissioners—of a multimember county commission which performed all the legislative and executive functions in a Georgia county. A five-justice majority of the Supreme Court concluded that a voting rights plaintiff cannot maintain a § 2 challenge to the size of a governmental body unless an "objective and workable standard for choosing a benchmark by which to evaluate a challenged voting practice" can be identified.[19]  The Court reasoned that without such

---

[15]*Id.* at 50, 106 S.Ct. at 2766.

[16]*Id.* at 51, 106 S.Ct. at 2766.

[17]*Id.*

[18]*Brewer v. Ham,* 876 F.2d 448, 451 (5th Cir.1989).

[19]--- U.S. at ----, 114 S.Ct. at 2588, 129 L.Ed.2d at 695.

6

a benchmark, the size of a governmental body cannot be challenged as dilutive under § 2 because "[t]here is no principled reason why one size should be picked over another...."[20]  We write today to answer two supplemental questions posed by the instant case. First, does *Holder* apply to a county-wide, multiple precinct structure for electing judicial officers?  Second, if so, does the Texas Constitution provide an "objective and workable" benchmark that would allow us to consider whether the numerical size of that structure dilutes minority voting strength?

1. *Holder and the JP Precincts*

CCE contends that *Holder* is inapplicable to judicial elections.  In *Holder,* the Supreme Court held that challenges to the numerical size of a "governmental authority" or a "governmental body" are precluded.[21]  Locking in on those terms, CCE observes that this case involves judicial precincts, not a "governmental body", and submits that to apply *Holder* to a county's judicial precincts would be an error.  We disagree.

Both Supreme Court and Fifth Circuit precedent state that judicial elections are subject to § 2 of the VRA.[22]  *Holder* is a

---

[20]*Id.*

[21]*Id.* at ---- - ----, 114 S.Ct. at 2586-88, 129 L.Ed.2d at 694-96.

[22]*See Chisom v. Roemer,* 501 U.S. 380, 403, 111 S.Ct. 2354, 2368, 115 L.Ed.2d 348 (1991) (state judicial elections are covered by § 2);  *Houston Lawyers' Ass'n v. Attorney General of Texas,* 501 U.S. 419, 424, 111 S.Ct. 2376, 2380, 115 L.Ed.2d 379 (1991) (section 2 of the VRA applies to "executive officers and ... judges whose responsibilities are exercised independently in an area coextensive with the districts from which they are elected");  *League of United Latin Am. Citizens v. Clements,* 999

7

controlling Supreme Court precedent and, *a fortiori,* must be considered in our review of § 2 vote dilution claims. The question remains, however, just how does *Holder* apply to the instant case.

In its narrowest sense, *Holder* stands for the proposition that when challenging the numerical size of a multimember, collegial county commission, a plaintiff may not, absent a "benchmark", posit a hypothetical expansion of the size of that multimember body.[23] Thus, *Holder* is not a perfectly congruent precedent, factually replicating and surgically resolving the precise issue now before us. Nevertheless, in the teachings of *Holder* we discern a broader and more generally applicable proposition: In a § 2 vote dilution claim, grounded in the numerical size of a governmental body, the plaintiff cannot beg the first prong of *Gingles.* In other words, when the existing size of the governmental body precludes a plaintiff from satisfying the first prong of *Gingles,* that plaintiff may not invoke hypothetical mutations and transfigurations of the existing political structure to circumvent that *Gingles* prerequisite. Such a use of hypotheticals would nullify the first prong, for whenever the first *Gingles* prong presented a problem, a plaintiff would only need to hypothesize some other political structure under which the first *Gingles* precondition would be met. The preconditions set forth in *Gingles* are necessary: Voting rights plaintiffs may not employ a self-serving thought experiment to leap-frog one of the "necessary"

---

F.2d 831, 838 (5th Cir.1993).

[23]--- U.S. at ----, 114 S.Ct. at 2588, 129 L.Ed.2d at 697.

*Gingles* preconditions.

Based on this lesson of *Holder,* we acknowledge that when a state elects its judges, as Texas has done in its JP Precincts,[24] those elections must be conducted in compliance with the VRA and the Supreme Court's interpretations of the VRA, including *Holder.* CCE's judiciary-exclusive interpretation of "governmental body" is spuriously narrow and simply wrong. We find nothing in *Holder* indicating that the Supreme Court's use of the term "governmental body" overruled, modified, or otherwise changed its consistent position that the VRA applies to judicial elections. Neither do we discern in *Holder* anything to indicate that its teachings are limited to elections of "representatives" from single-member districts or precincts who, together with similarly elected colleagues from other such districts, function as a multimember deliberative body, such as appellate courts, county commissions, school boards, or boards of aldermen.

Following Supreme Court precedent as well as our own, we hold that, in general, *Holder* does apply to the election of "judges whose responsibilities are exercised independently in an area coextensive with the districts from which they are elected."[25] In this particular case, *Holder* applies to the election of Justices of the Peace and Constables from Orange County's existing four JP

---

[24]At oral argument, counsel for CCE stated that under the Texas system, the geographical jurisdiction of a Justice of the Peace is coextensive with the boundaries of its electoral precinct.

[25]*Houston Lawyers',* 501 U.S. at 424, 111 S.Ct. at 2380.

Precincts and forecloses consideration of CCE's hypothetical five-precinct arrangement.

2. *Is "For The Convenience of the People" a Benchmark?*

In *Holder,* the Supreme Court observed that if a "benchmark"—a principled reason why a given number of precincts or districts is preferable to another—against which to test a challenged voting practice can be identified, a voting rights plaintiff may challenge the numerical size of a governmental body.[26]  CCE argues that the Texas Constitution provides such a benchmark for determining the number of JP Precincts for a given county.

The Texas Constitution states that "for the convenience of the people," counties with a population of 30,000 or more "shall be divided into not less than four and not more than eight [Justice of the Peace] precincts."[27]  The Texas Constitution offers no guidance whatsoever for determining whether a covered county should have four, five, six, seven, or eight JP Precincts, yet CCE urges that the phrase "for the convenience of the people" supplies the necessary benchmark.  We must disagree.

As the Supreme Court stated, a benchmark must be derived from an "objective and workable standard" that allows a court "to evaluate a challenged voting practice."[28]  Although at this juncture the precise contours of the term "benchmark" have yet to be described, we are confident that the elastic and amorphous phrase,

---

[26]--- U.S. at ----, 114 S.Ct. at 2588, 129 L.Ed.2d at 697.

[27]Texas Constitution art. 5, § 18.

[28]--- U.S. at ----, 114 S.Ct. at 2586, 129 L.Ed.2d at 695.

10

"for the convenience of the people," cannot supply the type of "objective and workable standard" that the Supreme Court envisions. In the for-the-convenience-of-the-people benchmark suggested by CCE, we are simply unable to discern *any* standard, much less an "objective and workable" one, by which to evaluate the dilutive effect of the four-precinct system.

## III.

## CONCLUSION

In closing, we reiterate that *Holder* controls, dictating that a dilution claim under § 2 of the VRA, challenging the size of an elected "governmental body"—whether it be legislative, executive, or judicial—cannot be maintained absent a readily identifiable "benchmark by which to evaluate a challenged voting practice."[29] The state constitutional provision proffered by CCE cannot supply the requisite benchmark; and, without such a benchmark, CCE's hypothetical five-precinct model cannot pass muster under *Holder.* Accordingly, we AFFIRM, in all respects, the judgment of the district court dismissing CCE's § 2 voting rights claim, and REMAND this case for further proceedings concerning CCE's remaining claims.

AFFIRMED and REMANDED.

---

[29]*Id.*