# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20581
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

June 6, 2018

Lyle W. Cayce
Clerk

MARCUS HACKETT,

> Plaintiff - Appellant

v.

UNITED PARCEL SERVICE,

> Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-1817

Before CLEMENT, COSTA, and WILLETT, Circuit Judges.

PER CURIAM:*

Plaintiff Marcus Hackett is a middle-aged black Trinidadian male, who has worked for defendant United Parcel Service ("UPS") since 1985. He sued UPS for race and national origin discrimination and retaliation under Title VII of the Civil Rights Act of 1964; race and national origin discrimination under 42 U.S.C. § 1981; and age discrimination and retaliation under the Age Discrimination in Employment Act of 1967 ("ADEA").

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-20581

The district court concluded that his claims were meritless and dismissed them on summary judgment. It also ruled that certain evidence proffered by Hackett was inadmissible and denied his motion to file a second amended complaint. Hackett appeals all of these decisions. We affirm.

I.

Hackett worked in various capacities during the course of his employment at UPS, frequently in supervisory positions. The present matter concerns the conduct of his colleagues and supervisors from 2008 through 2017, during which time he served as Security Supervisor (2008–2012), On-Road Supervisor (2012–2014), and Preload Supervisor (2014–2017).

Hackett has alleged the following incidents occurred while serving in the Security Department: (1) In 2008, one colleague and one supervisor made disparaging comments about his accent; and (2) a different supervisor falsely accused Hackett of wrongdoing in 2011 and 2012. The latter incidents were reported to a higher-ranking supervisor.

Hackett also alleged the following incidents occurred while he was an On-Road or Pre-load Supervisor: (1) In October 2012, one of Hackett's supervisors read a Bible verse stating, "slaves must obey their masters." Hackett reported this event to Human Resources. The supervisor retired the following year. (2) In 2013, Hackett's new supervisor made fun of the fact that he was a deacon at a church, and required Hackett to work late a few times on nights he had deacon meetings. (3) In 2014, a colleague encouraged fellow-coworkers to take photos of Hackett to catch him sleeping on the job. (4) In 2014–2015, a third supervisor, Kim Richards, consistently treated him unfairly by berating him and unduly requiring that he fill out disciplinary write-ups for himself. Hackett reported this conduct to Richards's supervisor.

In addition to this alleged mistreatment, Hackett highlights two instances in which he was wrongly passed over for an opening within the

No. 17-20581

company. The first occurred in 2013, when Hackett's supervisor was temporarily reassigned to work on a special project. Hackett expected to serve as his replacement, and alleged he was specifically told by the District Operations Manager that he was "in charge." Instead, another employee, Ray Ribelin, was chosen to serve as the replacement. UPS claims Ribelin was better qualified because of his ten years' experience as a Business Manager and his managerial experience in peak business season. Hackett took leave for several months to get over his distress about the decision.

The second instance occurred soon after his return from his leave in May 2014, when he was passed over for the job that was given to Richards, a black woman. Hackett argues he was more experienced than Richards, who was 38 years old at the time. UPS contends, however, that Richards had a master's degree in business, and her 2014 career status report rated her as "ready now" for promotion. By contrast, Hackett does not have a master's, and his most recent report from 2013 rated him as "still developing."

During his six-month leave, Hackett filed discrimination charges with the EEOC on February 27, 2014, which he later amended in response to Richards's promotion on April 21, 2015. The EEOC dismissed the claims on March 25, 2016, and notified Hackett of his right to sue. On June 23, 2016, Hackett filed a complaint alleging discrimination and hostile work environment based on age, race, national origin, and religion, as well as retaliation—though the religious discrimination charge was dropped in his first amended complaint filed October 7, 2016.

On August 17, 2017, the district court sustained certain objections raised by UPS to summary judgment evidence offered by Hackett, granted UPS's motion for summary judgment on all claims, and denied Hackett's motion for leave to file a second amended complaint. Hackett timely appealed.

No. 17-20581

II.

Summary judgments are reviewed de novo. *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 512 (5th Cir. 2018). Summary judgment is warranted only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court views "the evidence in the light most favorable to," and draws all reasonable inferences in favor of, the nonmoving party. *Midwest Feeders*, 886 F.3d at 513 (internal quotation omitted). But "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).

Evidentiary rulings are reviewed only for manifest error. *Berry v. Armstrong Rubber Co.*, 989 F.2d 822, 824 (5th Cir. 1993). When both summary judgment and evidentiary rulings are appealed, "appellate review is a two-tiered process" that begins with the evidentiary rulings and then turns to the summary judgment decision. *Id.*

Last, "[w]e review the district court's denial of a motion to amend a pleading for abuse of discretion." *Leal v. McHugh*, 731 F.3d 405, 417 (5th Cir. 2013). Notably, because the motion for leave to amend was filed after a scheduling order, the district court's decision was governed by Federal Rule of Civil Procedure 16(b). *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003). It therefore implicates our long-held protection of a trial court's "broad discretion to preserve the integrity and purpose of the pretrial order." *Id.* at 535 (quoting *Hodges v. United States*, 597 F.2d 1014, 1018 (5th Cir. 1979)). And unlike Rule 15, which encourages amendments to be granted freely in the interest of justice, Rule 16(b) states that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

No. 17-20581

III.

Hackett has raised numerous issues on appeal. Reviewing each in turn, we conclude none has merit.

*A. Evidentiary Decisions*

First, we find no manifest error in the court's decisions to exclude three statements proffered by Hackett. First, the court discarded a statement in Hackett's affidavit that described Ribelin as a Caucasian. Hackett's deposition testimony denied any knowledge of his background. Second, the district court excluded the assertion, based solely on Hackett's uncorroborated belief, that Richards was instructed by a specific UPS manager to treat Hackett in an abusive manner. Third, the district court excluded statements that Hackett made about a colleague's disciplinary history, which, again, he offered without providing a firm basis for this knowledge. We will not interfere with the district court's decision to reject these assertions; Hackett has failed to provide any persuasive basis on appeal for challenging the court's holding that they were not based on personal knowledge. *See* Fed. R. Civ. P. 56(c)(4). It was not a manifest error to exclude this evidence.

The court's decision to disregard portions of the summary judgment affidavit as a sham was similarly proper. "It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996). Accordingly, the district court may appropriately reject affidavits that contradict prior accounts—especially when no explanation for the conflict is offered. *See Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000).

Here, the court highlighted significant differences between the allegations in Hackett's deposition and his later-submitted affidavit. First, his affidavit suggested he had trained Richards rather extensively on a wide

5

variety of topics while his deposition stated he offered very limited training on a single subject. Second, his affidavit stated that Richards's supervisor never conversed with Hackett about his interaction with Richards, but his deposition stated that he and the supervisor had discussed the matter multiple times. Hackett has only offered bare assertions that these differences are reconcilable without any evidentiary support. And he offers no explanation for the change in his account. Accordingly, he has failed to demonstrate that the court committed manifest error.

### B. Statute of Limitations

Claims brought under section 1981 have a four-year statute of limitations—the default period applicable to most federal claims. *See Johnson v. Crown Enters., Inc.*, 398 F.3d 339, 341 (5th Cir. 2005). Since Hackett's section 1981 claim was filed June 23, 2016, the earliest date for a challengeable discriminatory act is June 23, 2012.

 For this reason, the district court concluded that Hackett's transfer out of the Security department in January 2012 was not actionable under the statute. Hackett contends instead that it was a "continuing violation" that continued after the cut-off date and thus should be considered timely. *See Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003) ("Under the continuing violations doctrine, a plaintiff may complain of otherwise time-barred discriminatory acts if it can be shown that the discrimination manifested itself over time, rather than in a series of discrete acts."). He asserts that this event was "part [of] a larger story of discrimination and retaliation that he had been suffering for years."

This assertion is insufficient to establish a continuing violation. Instead, the continuing violations doctrine applies when there is "an organized or continuing effort to discriminate." *Id.* This requires more than a showing that the transfer is merely "related to acts alleged in timely filed charges." *See Nat'l*

No. 17-20581

*R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Instead, the transfer, which Hackett calls a "demotion," is precisely the sort of "one-time employment event" that qualifies as a discrete act. *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279–80 (5th Cir. 2004). We therefore affirm the district court's holding regarding the statute of limitations.

### C. Hostile Work Environment

The district court granted summary judgment on Hackett's hostile work environment claim brought under Title VII, section 1981, and ADEA because he failed to establish a prima facie case. In order to properly allege a violation under these statutes, Hackett was required to demonstrate that (1) he is in a protected class; (2) he suffered unwelcome harassment (3) that was based on his membership in the protected class; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment, but did not take proper remedial action. *See Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011) (ADEA); *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (Title VII); *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.2 (5th Cir. 1996) (noting that section 1981 and Title VII claims are governed by "the same evidentiary framework").

Moreover, the fourth prong requires a showing that the incident was "sufficiently severe or pervasive" to create "an abusive working environment." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (internal quotation omitted). This involves a multifactor analysis, looking to the frequency and severity of the actions, whether danger or humiliation (not simply personal offense) resulted, and whether the conduct interferes with work performance. *Alaniz v. Zamora–Quezada*, 591 F.3d 761, 771 (5th Cir. 2009).

In support of his hostile work environment claims, Hackett cites eight discrete offenses that occurred over seven years and were committed by various

7

supervisors and colleagues. As the district court rightly noted, several of the incidents do not support to a prima facie case of Title VII, ADEA, or section 1981 discrimination. For example, one incident targeted Hackett on the basis of his religious affiliation, but Hackett dropped his religious discrimination claims in his amended complaint. Further, Hackett expressly denied some of the acts were motivated by his national origin, race, or age in his deposition testimony. Instead, he asserted they were either work-related or based on a personal grudge. As the court noted, other acts occurred prior to 2012 and are thus barred by the statute of limitations.

We are not persuaded by Hackett's attempts to thwart these conclusions on appeal through bald assertions to the contrary. Even if we were to credit some, it would still fail to establish the sort of "severe or pervasive" harassment that is required for a hostile work environment claim. *Hernandez*, 670 F.3d at 651. We agree with the district court that these incidents fail to meet this high hurdle.[1]

*D. Discrimination*

Title VII, section 1981, and ADEA discrimination claims based on circumstantial evidence require the court to apply the same burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 377–78 (5th Cir. 2010) (ADEA); *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (Title VII); *LaPierre*, 86 F.3d at 448 n.2 (Section 1981). Under this familiar framework, the plaintiff has the initial burden to establish a prima facie case, which, if properly made, shifts the burden to the employer to "rebut a presumption of discrimination by articulating a legitimate,

---

[1] Because we so rule, we need not consider UPS's additional argument that Hackett's hostile work environment claim was untimely.

nondiscriminatory reason for the adverse employment action." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007). "If the employer meets its burden, then it shifts back to the plaintiff to present substantial evidence that the employer's reason was pretext for discrimination." *Id.*

Hackett highlights two incidents in which he claims he suffered various forms of discrimination. First, he argues that he was subject to race and national origin discrimination when Ribelin was named acting manager in November 2013. Applying the summary judgment standard, the district court credited his testimony that he had indeed received some managing responsibilities temporarily before Ribelin's appointment, and that the appointment constituted an adverse action. It concluded, however, that Hackett had failed to demonstrate that UPS's legitimate reason for the decision—Ribelin's ten years of experience as a Business Manager and his experience in that capacity with peak season rush—was pretext.

We agree. Employment discrimination laws are "not intended to be a vehicle for judicial second-guessing of employment decisions, nor . . . to transform the courts into personnel managers." *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507–08 (5th Cir. 1988). At the time of UPS's decision, Hackett had only two years of experience as an operations manager, and he had no experience as a business manager during peak season. Peak season was imminent. The decision seems quite reasonable. Hackett fails to articulate any reason for this court to second-guess UPS's decision.[2]

---

[2] UPS's position is further buttressed by the fact the same individual who hired Ribelin also temporarily named Hackett for the position. Accordingly, as the district court noted, UPS was entitled to the same actor inference, which "creates a presumption that animus was not present where the same actor responsible for the adverse employment action either hired or promoted the employee at issue." *Spears v. Patterson UTI Drilling Co.*, 337 F. App'x 416, 421–22 (5th Cir. 2009).

Hackett also contends that UPS's failure to promote him in November 2014 was an act of age discrimination. UPS instead chose an employee who had a master's in business and was "ready" for promotion according to the company's own evaluation record. By contrast, Hackett does not have a master's and was not "ready" for promotion according to his evaluation record. Hackett offers no evidence that he was more qualified except for his longer tenure with the company. But we have never "attempt[ed] to equate years served with superior qualifications." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 923 (5th Cir. 2010) (internal quotation omitted). And we will not question the business determination that one employee is more qualified than another unless "the qualifications [are] so widely disparate that no reasonable employer would have made the same decision." *Id.* (internal quotation omitted).

We agree with the district court that such circumstances are not present here. On appeal, Hackett notes that he trained Richards, and cites other instances in which he was passed over for younger employees. Even if we were to consider both arguments, they fail to cast any doubt on UPS's explanation that it promoted Richards based on her qualifications. We see no reason to disturb the district court's conclusion.

*E. Retaliation*

As with discrimination, the same legal standard for retaliation applies to Title VII, section 1981, and ADEA claims, which includes the three-part *McDonnell Douglas* framework. *See, e.g.*, *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004) (Title VII and section 1981); *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998) (ADEA). A plaintiff must demonstrate that he was engaging in protected activity, that he suffered an adverse employment action, and that some causal link between the two exists.

See *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496–97 (5th Cir. 2015) (ADEA); *Davis*, 383 F.3d at 319 (Title VII and 1981).

Hackett alleged that the two acts of discrimination were also acts of retaliation. He notes that he made several complaints to either supervisors or Human Resources prior to Ribelin's November 2013 promotion. And Richards's November 2014 promotion followed Hackett's complaint to the EEOC. The district court found no causal link between these employment decisions and Hackett's complaints. We agree.

We first review the Ribelin promotion. Attempting to demonstrate this was an act of retaliation on appeal, Hackett revisits the various wrongs that he experienced during his time at UPS. Only two involve instances in which he reported certain behavior to a supervisor, and only one (the incident involving the Bible reading) involved a report to Human Resources that was further investigated and formally addressed. The latter was also the last potentially protected activity prior to Ribelin's promotion, yet it occurred over a year before the promotion. Moreover, there is no evidence in the record that suggests these complaints motivated UPS's decision to promote Ribelin, which was based on legitimate considerations. Especially given the long lapse between events, *see Feist v. Louisiana, Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 454–55 (5th Cir. 2013), the court reasonably concluded that there was no evidence to support an inference of causation.

Hackett's challenge to Richards's 2014 appointment suffers from a similar infirmity. He argues that the appointment was retaliation for his initial EEOC complaint in February 2014. But Richards was hired in November 2014, a full eight months after Hackett filed the EEOC charge. This timing is problematic for his prima facie case.

Hackett tries to bridge the causal gap by observing that it was during this interval that his colleague encouraged coworkers to take pictures of him

sleeping at work. But Hackett's own testimony severs any causal connection between this attempt to embarrass Hackett and the EEOC complaint; instead, Hackett testified it was likely in response to something that occurred many years prior.

Additionally, Hackett notes the various ways in which Richards seemed to target and discipline him unfairly once she received the position. Hackett provides no legal basis to support his use of post-retaliation evidence. And we, like the district court, fail to see how the after-the-fact conduct by Richards demonstrates a causal link between the EEOC charge and UPS's decision to promote her. Hackett's bald assertion (based on conjecture) that Richards was directed to act this way in retaliation does not clarify that connection.

Finally, Hackett references the promotions of two other employees, but offers no explanation as to how these decisions are in any way related to his EEOC complaint. We cannot discern a relationship. Accordingly, the district court's dismissal of Hackett's retaliation claims was appropriate.

*F. Motion to Amend*

Finally, Hackett appeals the district court's decision not to permit him to file an amended complaint outside the time specified in the scheduling order. Modifications to scheduling orders require a demonstration of good cause and the court's consent. Fed. R. Civ. P. 16(b)(4). Evaluating whether good cause exists requires a balance of four factors: "(1) the explanation for the failure to timely [comply]; (2) the importance of the [modification]; (3) potential prejudice in allowing the [modification]; and (4) the availability of a continuance to cure such prejudice." *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 237 (5th Cir. 2015) (internal quotation omitted).

The amended complaint sought to add a retaliation claim based on the actions of Hackett's current supervisor, Spring Williams. It lists a series of verbal confrontations initiated by Williams during which Hackett's litigation

No. 17-20581

was referenced. The events allegedly occurred from April 2017 until mid-June 2017. Hackett moved for leave to file his second amended complaint at the end of July, nine months after the applicable deadline to modify complaints and only a few weeks before the court issued its dispositive order granting summary judgment. And, notably, while the events occurred, the docket call had long been set for July 28, 2017—although this deadline was later cancelled on July 11, 2017.

The court noted that, in light of the pressing court deadline at the time, Hackett's failure to raise the claim until months after the mistreatment began suggests an unreasonable delay. Turning to importance, the court also doubted that Hackett's new claim—based entirely on a series of uncomfortable statements by a supervisor—met the prima facie requirement of establishing he suffered a materially adverse action. *Cf. Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 485 (5th Cir. 2008) (noting that rude treatment does not meet that standard, but instead "fall[s] into the category of petty slights, minor annoyances, and simple lack of good manners" (internal quotation omitted)). Lastly, when weighing the prejudice, the court was reluctant to reopen the entire litigation to further discovery, more depositions, and a second summary judgment process for an eleventh hour motion—especially when the court had just disposed of the rest of the case. And, as the court noted, Hackett could still vindicate his rights by filing a new EEOC claim (which, according to his appellate briefing, he already has).

Having reviewed this deliberation, we conclude that the district court did not abuse its "broad discretion to preserve the integrity and purpose of the pretrial order, which, toward the end of court efficiency, is to expedite pretrial procedure." *S&W Enters.*, 315 F.3d at 535 (internal quotation marks and citation omitted). Accordingly, we will not disturb its denial of Hackett's motion for leave to file an amended complaint

No. 17-20581

## IV.

AFFIRMED.